OPINION
{¶ 1} Appellant, Ralph E. Dykes, appeals from the July 18, 2005 judgment entry of the Painesville Municipal Court finding him guilty of disorderly conduct, sentencing him to thirty days in jail, and fining him $50.
 {¶ 2} On July 6, 2005, the Painesville City Police Department ("PCPD") filed a complaint against appellant for disorderly conduct, a misdemeanor of the fourth degree, in violation of R.C.2917.11(A)(1). Appellant entered a plea of not guilty at his initial appearance.
 {¶ 3} A bench trial took place on July 18, 2005. The following facts were revealed at trial. Officer Matthew Collins ("Officer Collins") of the PCPD testified for appellee, the state of Ohio. He indicated that he was working the midnight shift on June 24, 2005, and that shortly after midnight, he and Officer Dibble responded to a disturbance at the Kensington apartment complex. He saw Ralph H. Dykes ("appellant's uncle") drive into the complex, stating that his daughter, Shanavia, had been assaulted by Phillip Hardimon ("Hardimon"). Appellant's uncle then went looking for Shanavia.
 {¶ 4} Officer Collins indicated that when they got to the west side of the building, there was a large group of people gathered around three males fighting. He identified the three males as appellant, appellant's uncle, and Hardimon. Officer Collins stated that the three men "were all throwing punches back and forth at each other." The two officers called for the fight to break up, and at that time, he stated that, "Hardimon went down on the ground. Both the Dykes got down on top of him and continued to punch him. We yelled at them to stop."
 {¶ 5} Officer Collins saw that Hardimon was bleeding from the top of his head, and that appellant was standing over him, punching him in the face. Officer Collins testified that he gave them another warning to stop fighting and appellant's uncle jumped off Hardimon; however, appellant did not stop punching Hardimon. Officer Dibble deployed her Taser gun on appellant at that point. Officer Collins said that he witnessed appellant continue punching Hardimon in the face, after he and Officer Dibble had warned him repeatedly to stop. He saw appellant punch Hardimon in the face again, after Officer Dibble warned him that she was going to use her Taser. Officer Collins also stated that he witnessed appellant punch Hardimon at least five or six times. While appellant was being tased, Officer Collins further testified that appellant punched Hardimon another time.
 {¶ 6} On cross-examination, Officer Collins admitted that when they initially saw the fight, Hardimon was also throwing punches at appellant and his uncle.
 {¶ 7} Appellant presented Darryl Harris ("Harris") as his first witness. Harris stated that he witnessed an altercation between appellant's uncle and Hardimon. He said that appellant was there to "basically, [break] up the altercation between [appellant's] uncle and Hardimon." He also testified that he did not see appellant throw any punches at Hardimon, only appellant's uncle punch Hardimon.
 {¶ 8} Next to testify for appellant was Billy Thomas ("Thomas"). Thomas stated that on the night in question, he witnessed a fight between appellant's uncle and Hardimon. He testified that appellant's only role was to break up the fight. He also said that he did not witness appellant punch anyone.
 {¶ 9} Appellant's uncle testified for appellant after Thomas. He stated that the fight was between him and Hardimon. He testified that he was arrested for fighting Hardimon on June 24, 2005 and that he entered a plea of guilty to the charge. He indicated that he got a call from his daughter, stating that Hardimon "was jumping on her." He said that he went to the complex, found Hardimon, and punched him four times in the face. He also stated that appellant tried to pull him off Hardimon and that he did not see appellant punch anyone.
 {¶ 10} Appellant's wife, Theresa Caranci ("Caranci"), testified last for appellant. She stated that on the night of June 24, 2005, she witnessed the fight between appellant's uncle and Hardimon. She saw appellant break up the fight between his uncle and Hardimon. She said that she did not witness appellant punch Hardimon, but that she did witness appellant's uncle punch Hardimon.
 {¶ 11} After hearing all of the evidence, the trial court found appellant guilty of disorderly conduct. Immediately following the trial and in a judgment entry filed the same date, the trial court sentenced appellant to thirty days in jail, suspending twenty-seven of them, and ordering that he may avoid the jail sentence by doing three days of community service. The court then fined him $50 and ordered no contact with Hardimon.
 {¶ 12} It is from the July 18, 2005 judgment that appellant appeals, raising the following sole assignment of error:
 {¶ 13} "The trial court erred by finding [appellant] guilty of disorderly conduct, as this finding is against the manifest weight of the evidence."
 {¶ 14} Although in his assignment of error, appellant argues that his conviction was not supported by the manifest weight of the evidence, he primarily claims in his issue presented, as well as in his argument, that the evidence was not sufficient to support his conviction. In his issue posited for review, appellant maintains that "[t]he trial court erred in finding that [appellee] proved beyond a reasonable doubt that [a]ppellant engaged in disorderly conduct and/or injured the victim[.]" Thus, we will analyze appellant's assignment as a sufficiency of the evidence argument, as well as one involving manifest weight.
 {¶ 15} Sufficiency of the evidence and weight of the evidence are not synonymous legal concepts; they are both quantitatively and qualitatively different. State v. Thompkins (1997),78 Ohio St.3d 380, 386. As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13, "`[s]ufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented."
 {¶ 16} In Schlee, we further explained that:
 {¶ 17} "`"(* * *) [t]he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claimof insufficient evidence invokes an inquiry about due process. Itraises a question of law, the resolution of which does not allowthe court to weigh the evidence. * * *"'" Id. (Emphasis sic.) (Citations omitted.) "In essence, sufficiency is a test of adequacy[;] [w]hether the evidence is legally sufficient to sustain a verdict * * *." Thompkins, supra, at 386. Further, we note that the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v.Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 18} In analyzing appellant's sufficiency argument, we must look to the pertinent disorderly conduct statute in order to determine if appellee presented adequate evidence on the elements of the offense. R.C. 2917.11(A)(1) provides that that, "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior[.]"
 {¶ 19} Appellant contends that appellee did not sufficiently prove beyond a reasonable doubt that he committed disorderly conduct. He maintains that because his four witnesses provided the same factual version of the events, which differed from that of Officer Collins' version, appellee's only witness, that appellee failed to prove that appellant was guilty beyond a reasonable doubt. We disagree.
 {¶ 20} Officer Collins testified that he witnessed appellant punch Hardimon five or six times, including hitting him in the face several times, as well as hitting him after he was warned repeatedly to stop. Officer Collins further stated that even while Officer Dibble was using her Taser gun on appellant, that he punched Hardimon. This is more than sufficient evidence to sustain a disorderly conduct conviction.
 {¶ 21} Appellant also argues that in his defense, he presented adequate testimony to rebut appellee's evidence. Appellant is correct that his four witnesses testified that they did not see appellant punch Hardimon. However, in analyzing a sufficiency of the evidence argument, a reviewing court will not disturb a verdict unless it finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact.Dennis, supra, at 430. After reviewing the evidence, we cannot say that reasonable minds could not have concluded that appellant was guilty of disorderly conduct.
 {¶ 22} Appellant further maintains that because the trial judge stated, "after listening to testimony here, I'm not so sure exactly what happened here[,]" that reasonable doubt existed. However, immediately following that statement, the judge stated, "[i]t's hard to believe that this was someone coming in to break up a fight. Even if that's true, there was some type of interaction between [appellant] and [Hardimon], and that there had to be — common sense would tell you, before the Taser was let off, that there was at least a warning to break it up or disperse, or whatever the case may be. And not heeding that warning immediately, then he was tazed [sic.]." Thus, although the trial judge may have been "confused" as to why appellant went to the scene in the first place, he was clear that appellant was fighting and did not heed a warning to stop fighting when ordered to do so by Officer Dibble and Officer Collins.
 {¶ 23} Again, appellant also argues that his conviction was against the manifest weight of the evidence. Nevertheless, we affirm the trial court's decision.
 {¶ 24} In Schlee, supra, at 14-15, we explained that, "`manifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense."
 {¶ 25} "When assessing witness credibility, `the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'"State v. Brown, 11th Dist. No. 2004-T-0131, 2006-Ohio-129, at ¶40, quoting State v. Awan (1986), 22 Ohio St.3d 120, 123. "`Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it.'" Id., quotingWarren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at 3.
 {¶ 26} With this standard in mind, we conclude that the conviction was not against the manifest weight of the evidence. Appellant presented the testimony of four witnesses who stated that appellant did not punch Hardimon. However, appellee presented the testimony of a police officer from the PCPD, who testified that he witnessed appellant punch Hardimon five or six times, even after he had been warned. The trier of fact was free to believe the testimony of Officer Collins over the testimony of Harris, Thomas, appellant's uncle, and appellant's wife, Caranci.
 {¶ 27} Thus, appellant's sole assignment of error lacks merit. The judgment of the Painesville Municipal Court is affirmed.
William M. O'Neill, J., Colleen M. O'Toole, J. concur.