OPINION
{¶ 1} Jarvaris D. Russell appeals from the judgment of the Trumbull County Court of Common Pleas, convicting him on a jury verdict of aggravated burglary with a firearm specification. We affirm.
 {¶ 2} Friday, March 4, 2005, Mr. Robert Johnston was returning from work at about 5:15 p.m. when he noticed a Pontiac Grand Am, with three occupants, cruising slowly past his house at 1310 Heaton Boulevard in Weathersfield Township, Trumbull County, Ohio. After the car disappeared, Mr. Johnston briefly entered his home, then left again for a practice session of the girl's basketball team he coaches. He noticed that the garage door was open when he returned from work, and closed it before he left.
 {¶ 3} About 6:30 p.m., Mr. Johnston's wife, Buffy, decided to step outside the sliding glass doors in her kitchen for a cigarette. While there, she heard a noise in her garage. She opened the door leading from her kitchen to the garage, and turned on the light, to discover a man, later identified as Stanley Jones, evidently attempting to move her family's four-wheel drive vehicle. The garage door was open far enough to crawl under. Mrs. Johnston screamed at the man to leave. He stepped away from the four-wheeler, and stuck his hand in his coat pocket. Deciding he had a gun, Mrs. Johnston closed and locked the door between the garage and kitchen, and called 911.
 {¶ 4} Mrs. Johnston then tried to call her husband on his cell phone. Mr. Johnston did not get the call. Mrs. Johnston then called her neighbor, Shelly Charnas. Mrs. Charnas was at the grocery store, but called her husband Chris, who was home. Mr. Charnas threw on some clothes, and drove his truck to the Johnston's house. He spotted two people leaving the Johnston's garage, heading to a car parked further down the street, which they entered. Mr. Charnas blocked the car from moving with his truck, then got out.
 {¶ 5} A man exited the driver's side of the car Mr. Charnas was blocking, and began to say something. A Weathersfield police cruiser driven by Patrolman Aaron Pound arrived on the scene. The man who had exited the blocked car ran to a nearby wood. Mr. Charnas noticed the passenger side door of the blocked car opening, so he stepped over, and told the occupant to stay put. The passenger closed the door. Patrolman Pound put the passenger from the blocked car, later identified as Mr. Russell, in handcuffs, then into his cruiser.
 {¶ 6} Patrolman Pound then followed footprints left in the snow by the man who fled. About three hundred feet away, he found the man — Mr. Jones — lying in a clearing in some scrub. In the meantime, Mr. Johnston had received the voice message left by his wife on his cell phone, and returned home. He identified the car in which Mr. Jones and Mr. Russell were found as the Pontiac Grand Am he had seen cruising slowly by his house that afternoon.
 {¶ 7} While checking the garage to see if anything was missing, Mr. Johnston noticed the passenger side door of his wife's car was open, and that the garage door opener she kept in the car had disappeared. He was informed by an officer who had inventoried the Pontiac driven by Mr. Jones and Mr. Russell that there was a garage door opener on the passenger's side floor of the Pontiac. When Mr. Johnston visited the towing company where that vehicle had been taken, he discovered the garage door opener was his wife's. This opener had never been checked by the police for fingerprints or other physical evidence.
 {¶ 8} Patrolman Pound, who first responded to the scene, works part-time for the Weathersfield police. His next work day was the Wednesday following this incident. That afternoon, on the suggestion of Officer Stitt, who had also responded to Mrs. Johnston's 911 call, Patrolman Pound went and searched the clearing where he had discovered Mr. Jones for a gun. He found a loaded handgun. The Ohio Bureau of Criminal Investigations determined this gun was operable, though no fingerprints were recoverable.
 {¶ 9} April 22, 2005, Mr. Russell was indicted by the Trumbull County grand jury for aggravated burglary, in violation of R.C. 2911.11(A)(2) and (B), a felony of the first degree, with a firearm specification, R.C. 2941.145.
 {¶ 10} October 11, 2005, the matter came on for jury trial. Mr. Russell testified on his own behalf. He stated that he spent the afternoon with his girlfriend, Shannon Reynolds, in Niles. When his ride didn't arrive to pick him up, he left Miss Reynold's residence about 6:00 p.m., and began walking along St. Rt. 169 to the house of his uncle. Mr. Jones, an acquaintance from high school, was driving by, spotted him, and offered him a ride. Eventually, Mr. Jones turned off St. Rt. 169 onto Heaton, stopped, said he'd return shortly, and left the car. Shortly thereafter, a truck (Mr. Charnas') blocked the car off; a police car arrived; and Mr. Russell was handcuffed by Patrolman Pound, and placed in his cruiser. Mr. Russell denied ever having been near the Johnstons' house before; he denied leaving the car at any time; he denied any knowledge of Mr. Jones' burglary, or whether Mr. Jones possessed a gun; he denied trying to exit the car, as testified to by Mr. Charnas.
 {¶ 11} October 14, 2005, the jury returned a verdict, finding Mr. Russell guilty of both aggravated burglary, and the firearm specification. Following hearing October 31, 2005, the trial court sentenced Mr. Russell to five years imprisonment for aggravated burglary, and three years on the firearm specification, by a judgment entry filed November 4, 2005. November 28, 2005, Mr. Russell moved for a new trial, on the basis of a police cruiser video which had not been turned over to his attorney in discovery. By a judgment entry filed January 11, 2006, the trial court denied this motion. February 9, 2006, Mr. Russell timely noticed this appeal, assigning one error:
 {¶ 12} "[t]he appellant's conviction is against the manifest weight of the evidence."
 {¶ 13} While couched in terms of a manifest weight challenge, Mr. Russell's assignment of error seems to attack the sufficiency of the evidence, as well. The analysis applicable to each of these legal concepts is different. Cf. State v. Dykes, 11th Dist. No. 2005-L-131,2006-Ohio-4165, at ¶ 15. A manifest weight challenge concerns the believability of the evidence presented; a sufficiency challenge concerns whether the state has presented evidence on each element of an offense. Id.
 {¶ 14} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered.State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 15} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus.
 {¶ 16} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986),22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v.Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183,2000 Ohio App. LEXIS 1073, at 8. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 17} A challenge to the sufficiency of the evidence raises a question of law, of due process. Dykes at ¶ 16. On review, an appellate court asks whether any rational factfinder could have found all elements of the offense charged beyond a reasonable doubt. Id. The evidence adduced at trial, and all reasonable inferences, must be viewed in a light most favorable to the state. Id. an appellate court may not disturb a verdict for insufficiency of the evidence absent a finding that reasonable minds could not have reached that verdict. Id. A finding of sufficiency being required to submit a case to the jury, determination that a conviction is supported by the weight of the evidence is also dispositive of the question of sufficiency. State v.Thomas, 9th Dist. Nos. 22990 and 22991, 2006-Ohio-4241, at ¶ 6.
 {¶ 18} Mr. Russell was indicted and prosecuted as an accomplice to Mr. Jones. This required the state to produce evidence that Mr. Jones committed aggravated burglary, and that Mr. Russell acted with the requisite culpability in aiding, abetting, or conspiring with Mr. Jones in the commission of this crime. Cf. R.C. 2911.11 and 2923.03(A). Pursuant to R.C. 2911.11(A)(2), aggravated burglary may consist of trespassing by force or stealth in a separately secured portion of an occupied structure, with purpose to commit crime, while possessing or having under one's control a deadly weapon. Mr. Russell was further charged with, and convicted of, a firearm specification pursuant to R.C. 2941.145. This statute mandates a three year prison term for any offender who "had a firearm on or about [his] person or under [his] control while committing the offense and displayed the firearm, brandished the firearm, indicated that [he] possessed the firearm, or used it to facilitate the offense." Id. It is well-established that accomplices are equally liable with their principals under this statute. Cf. State v. Tate, 11th Dist. No. 2003-T-0094, 2004-Ohio-6689, at ¶ 1-2, 19-20, 28, 33-34.
 {¶ 19} The evidence presented by the state showed Mr. Jones' culpability for each element of aggravated burglary with a firearm specification; the great weight of this evidence proved the same. Mrs. Johnston testified that she spotted him in her garage. Both Mr. and Mrs. Johnston testified he was there without permission. This is trespass. R.C. 2911.11(A). Mr. Johnston testified he closed the garage door when he left that evening; Mrs. Johnston testified that door was open when she spotted Mr. Jones; and, her (missing) garage door opener was found in the car driven by Mr. Jones and Mr. Russell. This is trespass by stealth or deception. Id. Mrs. Johnston testified Mr. Jones was trying to steal the Johnstons' four-wheeler. This is a criminal offense. Id. Mrs. Johnston testified Mr. Jones put his hand in his pocket, which she interpreted as a threat to use a firearm; and, a firearm was found in the clearing where Mr. Jones was captured. This indicates Mr. Jones had a deadly weapon on his person while committing the burglary, R.C. 2911.11(A)(2); and, that he indicated to Mrs. Johnston that he possessed it. R.C. 2941.145.
 {¶ 20} Further, the state presented evidence by which a jury could easily find Mr. Russell acted as Mr. Jones' accomplice. Mr. Johnston spotted the Pontiac driven by Mr. Jones driving slowly on his street, past his house, about 5:15 p.m. the day of the incident, with three occupants. Mr. Russell stated that he was with his girlfriend until 6:00 p.m. A jury could choose to infer from Mr. Johnston's testimony that Mr. Jones and Mr. Russell, with a third individual, were "casing" the neighborhood. Awan at 123.
 {¶ 21} Mr. Johnston testified that his garage door was open when he returned home that afternoon, and that he closed it when he left. Mrs. Johnston testified that it was open when she spotted Mr. Jones. Mr. Johnston testified that, after the incident, his wife's garage door opener was missing, and that he recovered it from the suspects' car. A jury could infer that Mr. Jones and Mr. Russell stole the garage door opener from Mrs. Johnston's car during the afternoon, and used it to gain entrance that evening. Cf. DeHass at paragraph one of the syllabus.
 {¶ 22} Mr. Russell notes that Mrs. Johnston never saw a gun; that the police did not recover the gun for almost a week; and, that there were no fingerprints on the gun. Mrs. Johnston testified that she understood Mr. Jones' gesture of sticking his hand in his pocket as indicating he had a gun; Patrolman Pound found the gun in the same clearing where he found Mr. Jones; the state's expert testified that fingerprints often deteriorate, or do not appear on handled surfaces intelligibly at all. A jury could infer the gun was Mr. Jones'. Cf. DeHass at paragraph one of the syllabus.
 {¶ 23} Mr. Russell denies he ever left the Pontiac while it was parked near the Johnston's, and notes that Mrs. Johnston only spotted one man in her garage. A jury could infer that Mrs. Johnston might miss the presence of a third individual in the consternation of finding her house burglarized. Mr. Russell admits that Mr. Charnas saw two people exit the garage — and fastens on Mr. Charnas' inability to specifically identify those people. Mr. Charnas testified that two people exited the garage; both entered the Pontiac; that he prevented the passenger from escaping; and, that he watched over the passenger until Patrolman Pound handcuffed that individual and put him in his police cruiser. Mr. Russell admits he was that individual. A jury could choose to believe Mr. Charnas rather than Mr. Russell. Awan at 123.
 {¶ 24} The state met its burden, regarding both sufficiency and manifest weight of the evidence, in showing that Mr. Russell acted as Mr. Jones' accomplice in committing aggravated burglary, with a firearm specification. The state introduced probative evidence on each element of the crime, thus providing "sufficient" evidence, cf. Dykes at ¶ 17. Nothing in the record indicating the jury lost its way in convicting Mr. Russell. Martin at 175. The assignment of error is without merit.
 {¶ 25} The judgment of the Trumbull County Court of Common Pleas is affirmed.
DONALD R. FORD, P.J., CYNTHIA WESTCOTT RICE, J., concur.