OPINION
{¶ 1} Aimee R. Shingledecker appeals from the judgment of the Lake County Court of Common Pleas, Juvenile Division, adjudicating her children Paige Matsko and Kori Shingledecker to be dependent, and awarding protective supervision to the Lake County Department of Job and Family Services (the "department of family services"). We affirm. *Page 2 
 {¶ 2} June 27, 2006, the department of family services filed two identical complaints, alleging Paige and Kori were dependent children. August 1, 2006, Ms. Shingledecker answered, denying the complaints. The matters came on for adjudication September 20, 2006, the trial court finding dependency. Partial dispositional hearing was held September 21, 2006. Ms. Shingledecker timely appealed October 18, 2006.[1]
 {¶ 3} The following facts are taken from the transcript of trial. On the evening of May 12, 2006, Lieutenant Randy Ice and Officer Dan Sabruno of the city of Wickliffe Police Department responded to a complaint made by Ms. Twila Dowling, of 440 East 300th Street. Ms. Shingledecker's children, Paige, then nine years of age, and Kori, about two, were in Ms. Dowling's apartment. Paige was in a good mood, and talkative with the officers, while Kori remained silent.
 {¶ 4} Ms. Dowling evidently informed the officers she had promised to look after Paige and Kori should Ms. Shingledecker have a problem, and that the children had turned up at her apartment's door a little while before. Ms. Shingledecker had fought that evening with her estranged husband, Karl Shingledecker, about a criminal matter with which he was charged. Ms. Shingledecker is an admitted alcoholic and it appears that Ms. Dowling was concerned Ms. Shingledecker was drunk.
 {¶ 5} The officers found Ms. Shingledecker in an apartment neighboring her own, with a minister. Eventually, they returned with her to her apartment. The officers testified that Ms. Shingledecker was visibly intoxicated and staggering, and that there was an open bottle of vodka in her apartment. Ms. Shingledecker became extremely agitated with the officers, yelling and screaming at them repeatedly, before they could *Page 3 
calm her. The officers testified her apartment was dirty and unkempt, with clothes piled on the floor, and unwashed dishes in the kitchen.
 {¶ 6} The officers advised Ms. Shingledecker she was unable to take care of the children that evening, due to her intoxication. Her father-in-law, Charles Shingledecker, was contacted to pick up the children. The officers escorted the children to a police cruiser, to await their grandfather's arrival. The officers then heard Ms. Shingledecker yelling again, and the sound of objects being thrown about her apartment. Returning, they found Ms. Shingledecker in the apartment hallway, evidently being confronted by neighbors. The officers arrested Ms. Shingledecker for disorderly conduct.
 {¶ 7} At some point, Karl Shingledecker, the children's father, emerged from another apartment. At trial, the responding officers speculated he was hiding either from Ms. Shingledecker, or from them. It appeared to the officers that Karl Shingledecker had also been drinking, though he seems to have behaved quietly. He agreed his father, Charles, should take custody of Paige and Kori for the night.
 {¶ 8} Ms. Carly Delpercio, a social worker from the department of family services, testified regarding Ms. Shingledecker's alcoholism, stating Ms. Shingledecker attributed her relapse, culminating in the May 12, 2006 incident to her husband's pending criminal charges.[2] She noted Ms. Shingledecker's refusal either to sign releases regarding her intended treatment at a local rehabilitative center, or to enter into a "safety plan" — i.e., designation of a friend or relative to take custody of the children should she commence drinking. *Page 4 
 {¶ 9} Over objection, Ms. Delpercio also testified about an interview she held with Paige, the eldest of the children, May 23, 2006.[3] Ms. Delpercio testified Paige told her that Ms. Shingledecker commenced drinking after Karl Shingledecker left the apartment, and that Ms. Shingledecker became upset, and began yelling, including while on the phone with Paige's grandmother. Ms. Delpercio testified that Paige stated she and Kori were then sent to Ms. Dowling's apartment, and that Paige claimed to be scared and tearful. Ms. Delpercio further testified that Paige told her, when the police officers arrived, they made her go into the bedroom, and turn up the volume on the television, so she would not hear her mother's screaming.
 {¶ 10} On appeal, Ms. Shingledecker makes three assignments of error:
 {¶ 11} "[1.] The trial court's adjudication of dependency was supported by insufficient evidence or, alternatively, was against the manifest weight of the evidence.
 {¶ 12} "[2.] The trial court erred when it admitted hearsay statements of a minor child to the social worker into evidence in a dependency adjudication.
 {¶ 13} "[3.] The trial court erred when it conducted adjudication and dispositional hearings after the statutory jurisdictional time limits had expired."
 {¶ 14} We deal with the assignments of error in reverse order.
 {¶ 15} By her third assignment of error, Ms. Shingledecker alleges the trial court was divested of jurisdiction due to failure to comply with the time limits set forth at R.C. 2151.28(A), regarding adjudicatory hearings; and R.C. 2151.28(B)(3) regarding *Page 5 
dispositional hearings. Ms. Shingledecker notes that R.C. 2151.28(A)(2) generally requires adjudicatory hearings be held no later than thirty days from the filing of a complaint alleging abuse, neglect or dependency of a child; and that R.C. 2151.28(A)(2)(b) sets an outer limit of sixty days from the filing of the complaint for an adjudicatory hearing. The complaints of dependency in this case were filed June 27, 2006, while the adjudicatory hearing was held September 20, 2006 — well outside the sixty day limit set forth in R.C. 2151.28(A)(2)(b). Further, R.C. 2151.28(B)(3) requires dispositional hearing in cases alleging abuse, neglect or dependency be held within ninety days of the filing of the complaint. In this case, only a partial disposition was effected September 21, 2006; a final dispositional hearing was set for December 7 of that year.
 {¶ 16} These points are not well-taken. Both Juv.R. 29(A) and R.C.2151.28(K) provide that failure of the trial court to hold adjudicatory hearing on complaints concerning abuse, neglect or dependency within the time periods set forth by the Juvenile Rules or statute does not affect jurisdiction. Furthermore, this court has held the proper remedy for failure by the trial court to observe the ninety day limit for dispositional hearings set forth at R.C. 2151.28(B)(3) is to move that court for dismissal without prejudice. In re Chapman (Apr. 10, 1998), 11th Dist. No. 97-A-0001, 1998 Ohio App. LEXIS 1537, at 10. "Once that legal remedy has been exhausted, the next step is to file a timely petition for an extraordinary writ * * *. The failure to file a motion and subsequent petition operates as a waiver of the statutory speedy hearing rights." Id. In this case, Ms. Shingledecker moved to dismiss on or about October 13, 2006 — but she never petitioned for an extraordinary writ. Instead, she noticed this appeal. *Page 6 
Consequently, any failure by the trial court to complete dispositional hearing within ninety days was waived.
 {¶ 17} The third assignment of error is without merit.
 {¶ 18} By her second assignment of error, Ms. Shingledecker disputes the trial court's decision to allow Ms. Delpercio to testify regarding her May 23, 2006 interview with Paige. Evidentiary rulings being within the sound discretion of the trial court, we review them for abuse of discretion. State v. Cochran, 11th Dist. No. 2006-G-2697, 2007-Ohio-345, at ¶ 16. "Abuse of discretion" is not mere error of law or judgment; rather, it connotes an unreasonable, arbitrary, or unconscionable attitude. Id.
 {¶ 19} At the time of the May 12, 2006 incident, Paige was nine years old, and unqualified to testify under Evid.R. 601(A), absent a determination of competency by the trial court. Brandt v. Brandt, 3d Dist. No. 2-05-30, 2006-Ohio-883, at ¶ 9-10. By the time of trial, she was ten, and should have been available as a declarant. In either case, the admission of Ms. Delpercio's testimony, over strenuous objection by Ms. Shingledecker's counsel, was an abuse of discretion. The trial court never interviewed Paige to determine her competency; it allowed Ms. Delpercio to give hearsay testimony concerning what Paige told her.[4]
We further note that, though the court erred by allowing the hearsay, no effort was made by the defense to call Paige as a witness, or request an in-camera interview in their case in chief.
 {¶ 20} The second assignment of error has merit. However, that error is harmless, for reasons made clear in addressing Ms. Shingledecker's first assignment of error. *Page 7 
 {¶ 21} By her first assignment of error, Ms. Shingledecker contends the adjudications of dependency were either supported by insufficient evidence, or were against the manifest weight of the evidence. The analysis applicable to each of these legal concepts is different. Cf.State v. Dykes, 11th Dist. No. 2005-L-131, 2006-Ohio-4165, at ¶ 15. A sufficiency challenge concerns whether the state has presented evidence on each element of an offense; a manifest weight challenge goes to the believability of the evidence presented. Id.
 {¶ 22} A sufficiency challenge raises a question of law, of due process. Dykes at ¶ 17. On review, an appellate court must ask whether any rational factfinder could have found all elements of the offense charged beyond a reasonable doubt. Id. The evidence adduced at trial, and all reasonable inferences, must be viewed in a light most favorable to the state. Id. An appellate court may not disturb a verdict for insufficiency of the evidence absent a finding that reasonable minds could not have reached that verdict. Id.
 {¶ 23} In juvenile proceedings, we apply the criminal standard for reviewing manifest weight challenges. Cf. In re Corey, 11th Dist. No. 2005-G-2649, 2006-Ohio-2013, at ¶ 17. Under this standard, when reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also, State v. Thompkins (1997),78 Ohio St.3d 380, 387. *Page 8 
 {¶ 24} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 25} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986),22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v.Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at 8. If the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 26} Finally, determination that a judgment was against the manifest weight of the evidence is dispositive of whether it was against the sufficiency of the evidence. State v. Thomas, 9th Dist. Nos. 22990 and 22991, 2006-Ohio-4241, at ¶ 6.
 {¶ 27} In this case, the complaints of dependency were premised on R.C. 2151.04(C), which provides that a child is dependent "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" Dependency must be established by clear and convincing evidence. In reElliott, *Page 9 
11th Dist. No. 2005-A-0018, 2006-Ohio-738, at ¶ 11. "`Clear and convincing evidence' is more than a mere preponderance of the evidence. Rather, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." In re Ranker (Oct. 6, 2000), 11th Dist. No. 99-P-0078, 2000 Ohio App. LEXIS 4661, at 5. "In determining whether a child is dependent, the focus should be on the child's condition and environment and not on the conduct of the parent." In re Biery (Feb. 27, 2001), 7th Dist. No. 99-BA-44, 2001 Ohio App. LEXIS 964, at 4. (Alternate citation omitted.) However, the conduct of a parent is significant, insofar as it forms part of the child's environment. Id. at 4-5.
 {¶ 28} There are several strong arguments supporting Ms. Shingledecker's contention the findings of dependency in this case were insufficiently supported by the evidence, or against its manifest weight. The evidence all relates to one incident: Ms. Shingledecker's May 12, 2006 drinking binge. The evidence indicates Ms. Shingledecker arranged to have her children looked after by Ms. Dowling during her incapacitation, and that Ms. Dowling was an appropriate caretaker. Ms. Shingledecker also testified that her father-in-law, Charles, was available and willing to look after the children. While the police testified that the Shingledecker apartment was dirty and unkempt, they could not point to anything dangerous to the children therein; and, they agreed that Paige seemed cheerful, until her mother was arrested. Only the inadmissible hearsay presented by Ms. Delpercio, concerning her interview with Paige, reveals unhappiness on the part of the children due to Ms. Shingledecker's condition that evening. *Page 10 
 {¶ 29} Nevertheless, the record shows that Karl Shingledecker was imprisoned, and that, whatever her understandings with Ms. Dowling or her father-in-law, Ms. Shingledecker was, in effect, solely responsible for the children. As such, she is the principal influence on their environment; and consideration of her conduct and condition was an appropriate consideration for the learned and experienced trial judge in determining dependency. Cf. Biery at 4-5. Ms. Shingledecker is an admitted alcoholic; the record clearly establishes she has difficulty in maintaining treatment for her disease, and will not cooperate with the department of family services in its attempts to help her cope. The testimony of the police officers showed that Ms. Shingledecker was not in control of herself the evening of May 12, 2006. While incidents of intoxication by a parent may be insufficient to establish her children's dependency, evidence of untreated alcoholism or drug addiction can.
 {¶ 30} Even without Ms. Delpercio's hearsay testimony regarding Paige, the trial court's findings of dependency were neither against the manifest weight of the evidence, nor insufficiently supported. The first assignment of error is without merit.
 {¶ 31} The judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.
WILLIAM M. O'NEILL, J., concurs,
DIANE V. GRENDELL, J., concurs in judgment only.
[1] The matters were treated together in the trial court, and have been consolidated on appeal.
[2] At the time of trial, Karl Shingledecker appears to have been incarcerated in the correctional facility at Grafton.
[3] The record indicates Paige turned ten June 18, 2006.
[4] We respectfully acknowledge the trial court's careful handling of this issue. Recognizing the difficulties in Ms. Delpercio's testimony, it encouraged Ms. Shingledecker's counsel to make a full objection. *Page 1