[Cite as *In re K.T.*, 2015-Ohio-3543.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

IN THE MATTER OF:                    :          **O P I N I O N**
K.T., H.W.T., AND E.T.,
DEPENDENT CHILDREN                   :

                                     :          **CASE NOS. 2014-L-134,**
                                                **2014-L-135**
                                     :          **and  2014-L-136**

                                     :

Civil Appeal from the Lake County Court of Common Pleas, Juvenile Division, Case Nos. 2014 AB 000961, 2014 AB 000962, and 2014 AB 000963.

Judgment: Affirmed.

*Kenneth J. Cahill*, Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH  44077 (For Appellant, Teresa Taylor, Biological Mother).

*Charles E. Coulson*, Lake County Prosecutor, and *Karen A. Sheppert*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH  44077  (For Appellee, Lake County Department of Job and Family Services).

*Cory R. Hinton*, Rand, Gurley & Hanahan, LLC, 8570 Mentor Ave., Mentor, OH  44094 (Guardian ad Litem).

COLLEEN MARY O'TOOLE, J.

{¶1}   Appellant, Teresa Taylor, Biological Mother ("Mother"), appeals from the December 1, 2014 judgment of the Lake County Court of Common Pleas, Juvenile Division.  The juvenile court overruled Mother's objections to the magistrate's decisions, found her children, H.W.T., E.T., and K.T. ("minor children") dependent, and granted

appellee, Lake County Department of Job and Family Services ("LCDJFS") protective supervision.[1]  On appeal, Mother asserts the juvenile court erred in finding the minor children dependent as defined in R.C. 2151.04(C).  For the reasons stated, we affirm.

{¶2}  On May 20, 2014, complaints were filed alleging the minor children were abused, dependent, and neglected.  Following a hearing, the juvenile court granted LCDJFS ex parte emergency temporary custody of all three children that same date.  A guardian ad litem was appointed.

{¶3}  An adjudicatory hearing was held on July 30, 2014.  A total of five witnesses testified: Eileen McGee, M.D.; Kiley Ritt; Shannon Easter Kelly; Sarah Grenier; and Mother.

{¶4}  At that hearing, it was revealed that Mother and Michael Taylor, Biological Father ("Father"), are married and reside with the minor children in Eastlake, Lake County, Ohio.[2]

{¶5}  The two oldest children, H.W.T. and E.T., have significant behavioral problems.[3]  They were treated by Dr. McGee, a child psychiatrist and associate medical director at Signature Health.  Both children were prescribed medications.  Mother claimed H.W.T. took pills every day.  However, Mother indicated she did not administer E.T.'s prescribed medication for one month.  Mother claimed the medication was accidentally thrown out but she never renewed the prescription.

{¶6}  Dr. McGee became aware there were several guns in the family home, which the minor children had access to.  While at school one day, E.T. threatened to go

---

1. H.W.T. was born on October 17, 2003; E.T. on April 5, 2007; and K.T. on April 11, 2011.

2. Father is not a named party to this appeal.

3. Mother admits that H.W.T. and E.T. have behavioral issues.

home, get Father's gun, and return to school to kill another student. H.W.T. also made various threats and, upon Dr. McGee's recommendation, was hospitalized.

{¶7} Mother acknowledged having guns in the home. Father reported having a total of three. However, Mother and Father did not believe in gun safes or trigger locks. Mother had no interest in securing the guns because she wanted them ready at hand. Mother claimed the guns were either on their persons or locked in their bedroom. Mother admitted to keeping a gun under her pillow because H.W.T. had threatened to kill her in her sleep.

{¶8} Dr. McGee was aware that the minor children had gone into Mother and Father's bedroom, which was secured by an outside latch on French doors. In fact, H.W.T. told Dr. McGee during one of their sessions that he knew how to get into the bedroom, i.e., merely pull up a chair and open the latch. Dr. McGee recommended the minor children be placed with LCDJFS given her concerns regarding their behavior and the safety issues in the family home.

{¶9} Ms. Kelly, a licensed social worker at Signature Health, worked with H.W.T. and E.T. Additional concerns were raised especially with respect to H.W.T. as he had threatened to kill Mother as well as jump out a window and kill himself. During one session, Ms. Kelly indicated H.W.T. acted violently and aggressively. H.W.T. hit and kicked Mother while he was upside down in a chair. During that episode, E.T. hid behind Ms. Kelly's chair. Ms. Kelly stated that H.W.T was also violent toward Mother during three or four more sessions.

{¶10} Ms. Kelly also indicated that H.W.T. and E.T. would argue and physically fight with each other. During one session, H.W.T. punched E.T. in the face with his fist.

3

According to Ms. Kelly, Mother had told her that the fighting between the children happened quite frequently. Mother also indicated that some of the violent episodes at home required her to call the police.

{¶11} Mr. Ritt, case manager at Family Pride, was assigned to work with the Taylor family. On one occasion while at the family home for a meeting, Mr. Ritt stated that Mother and Father were engaged in a domestic argument. Mr. Ritt indicated the matter escalated and Father struck the kitchen cabinetry. Mr. Ritt reached into his pants pocket for a pen in order to make some notes. At that time, Father reached for and pulled out a gun, which was holstered in his front waistband under a t-shirt. Father ordered Mr. Ritt to throw out his pen. Father acted violently and aggressively.

{¶12} Mother claimed Mr. Ritt pulled out a weapon, i.e., a tactical pen. Mr. Ritt, however, stated he pulled out an ordinary ink pen. During the domestic altercation and the pulling out of the gun by Father, Mr. Ritt indicated that H.W.T. was nearby. As a result of this incident, Mr. Ritt refused to go back to the family home.

{¶13} Ms. Greiner, an intake social worker with LCDJFS, also worked with the Taylor family. Ms. Greiner stated that Mother told her that she keeps a gun underneath her pillow. Ms. Greiner also noted a date when Mother called her in regard to an outdoor cooking incident. Ms. Greiner was told that E.T. was throwing ammunition in a fire and that H.W.T. was physically injured as a result, while Mother and Father were inside. Ms. Greiner recommended seeking medical attention.

{¶14} Another hearing was held before the magistrate in August 2014. Both the GAL and the magistrate recommended granting protective supervision of the minor children to LCDJFS. On August 1 and 5, 2014, the magistrate issued decisions

4

dismissing the abuse and neglect counts but finding the minor children dependent. On August 12 and 19, 2014, Mother filed objections. LCDJFS filed a response on August 26, 2014. Mother later filed supplemental objections on October 7, 2014. LCDJFS filed a response on October 23, 2014.

{¶15} On December 1, 2014, the juvenile court overruled Mother's objections to the magistrate's decisions and adopted them in full. The juvenile court found the minor children dependent and granted LCDJFS protective supervision. Mother filed timely appeals and asserts the following assignment of error:[4]

{¶16} "Whether the trial court erred to the prejudice of the appellant when it found her children dependent as defined in R.C. 2151.04(C)."

{¶17} In her sole assignment of error, Mother argues the juvenile court erred in finding the minor children dependent under R.C. 2151.04(C). Mother contends the court's findings are against the manifest weight and sufficiency of the evidence.

{¶18} In this case, the complaints of dependency were premised on R.C. 2151.04(C), which states that a child is dependent "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"

{¶19} "Dependency must be established by clear and convincing evidence. [Juv.R. 29(E)(4)]; *In re Elliott*, 11th Dist. No. 2005-A-0018, 2006-Ohio-738, at ¶11. "'Clear and convincing evidence" is more than a mere preponderance of the evidence. Rather, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.' *In re Ranker* (Oct. 6, 2000), 11th

---

4. This court sua sponte consolidated Case Nos. 2014-L-134, 2014-L-135, and 2014-L-136 for all purposes.

Dist. No. 99-P-0078, 2000 Ohio App. LEXIS 4661, at *5. 'In determining whether a child is dependent, the focus should be on the child's condition and environment and not on the conduct of the parent.' *In re Biery* (Feb. 27, 2001), 7th Dist. No. 99-BA-44, * * *, 2001 Ohio App. LEXIS 964, at *4. However, the conduct of a parent is significant, insofar as it forms part of the child's environment. Id. at 4-5." *In re Matsko*, 11th Dist. Lake Nos. 2006-L-230 and 2006-L-231, 2007-Ohio-2060, ¶27. (Parallel citations omitted.)

**{¶20}** "Appellate courts apply the criminal standard for reviewing manifest weight challenges in juvenile proceedings involving abuse, neglect, and/or dependency. *In re Savchuk*, 180 Ohio App.3d 349, 2008-Ohio-6877, ¶28 * * * (11th Dist.) [(O'Toole, J., dissenting on other grounds)]. 'Under this standard, when reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created (* * *) a manifest miscarriage of justice (* * *).' *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 * * *(1st Dist.1983).

**{¶21}** "'"(O)nce the clear and convincing standard has been met to the satisfaction of the [juvenile]) court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof.'" *Id.* at ¶29, quoting *In re Holcomb,* [18 Ohio St.3d 361,] at 368 [(1985)]. Sufficiency is a legal term of art describing the legal standard which is applied to determine whether the evidence is legally sufficient to support the judgment as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 * * *(1997)." (Parallel citations

omitted.) *In re C.D.D. and H.G.D.*, 11th Dist. Portage Nos. 2011-P-0065 and 2011-P-0066, 2012-Ohio-3302, ¶22-23.

**{¶22}** In the case sub judice, Mother focuses on several instances to support her position that the magistrate erred in his finding of dependency. Mother claims there is no clear and convincing evidence that the minor children are dependent. Mother stresses that E.T. and H.W.T., who had a prior delinquency charge, are receiving treatment as they are under the care of a psychiatrist and a social worker. Mother also stresses they receive medication for their behavioral issues. She further asserts that there is no evidence that the minor children were in any danger and/or that the family environment had a negative impact on them.

**{¶23}** As stated, in determining dependency, the focus is on the child's condition and environment. *In re Matsko, supra,* at ¶27. Parental conduct is significant, insofar as it forms part of the child's environment. *Id.* Contrary to Mother's assertions and upon review of the entire record, we find LCDJFS presented sufficient evidence that Mother's and Father's conduct placed the minor children in a condition or environment which justified the intervention and warranted a finding of dependency. R.C. 2151.04(C).

**{¶24}** The evidence and testimony presented reveal a highly volatile environment in which the minor children are at risk. Father walks around the house with a handgun in his waistband. Mother and Father argue in front of the minor children. The arguments have escalated to include an instance where Father punched cabinetry and pulled a gun on case worker Ritt while H.W.T. was nearby. Also, the fighting

between H.W.T. and E.T. and the fighting with Mother cannot be controlled by the parents as the police have been called to the family home to intervene.

{¶25} The record further reveals that H.W.T. and E.T. have significant behavioral problems. They are treated by psychiatrist Dr. McGee and social worker Ms. Kelly. They are on medication. They are violent toward each other. They are violent toward Mother. They are violent toward others.

{¶26} The minor children have access to guns. As stated, Father walks around the house with a handgun in his waistband. Mother and Father do not believe in gun safes or trigger locks. Mother told Dr. McGee that she had no interest in securing the weapons because she wants them to be ready at hand. The guns are stored in Mother and Father's bedroom, which is only secured by an outside latch on French doors. The minor children know how to get into the bedroom, i.e., merely pull up a chair and open the latch. The minor children have entered Mother's and Father's bedroom at night without their knowledge.

{¶27} E.T. threatened to take Father's gun to school and kill another student. H.W.T. threatened to kill himself by jumping out a window. H.W.T. also threatened to kill Mother in her sleep. As a result of the threats, Mother is concerned for her safety and admitted to keeping a gun underneath her pillow at night. This environment reveals that all members of the household are in danger.

{¶28} By no means is this court questioning one's Second Amendment right to own a gun. However, the facts presented in this case reveal irresponsible gun ownership. Mother and Father, through their behavior, created a dangerous home environment because they do not believe in gun safes or trigger locks even though

8

there are three young children in the home. Not only were the children disturbed, they also had access to the guns which were not stored or secured in a safe manner.

**{¶29}** We stress that children have a right to be safe and secure in their home. *See In re S.K.*, 2d Dist. Clark No. 2009 CA 26, 2009-Ohio-3954, ¶58. The safety and welfare of the child is of paramount concern. *See Sheridan v. Sheridan*, 6th Dist. Williams No. WM-04-010, 2005-Ohio-6007, ¶28. Clearly, the home environment in this case was not safe and secure.

**{¶30}** Based upon the foregoing, and all of the evidence presented at the adjudicatory hearing, as previously discussed, we find the juvenile court did not err in finding clear and convincing evidence that the minor children are dependent as defined in R.C. 2151.04(C). There is nothing to suggest that any of the evidence is legally insufficient to support the court's judgment or that its judgment is based on an irrational view of the evidence. Also, there is nothing to suggest that the trier of fact clearly lost its way and created a manifest miscarriage of justice in adjudicating the minor children dependent.

**{¶31}** For the foregoing reasons, appellant's sole assignment of error is not well-taken. The judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.


THOMAS R. WRIGHT, J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only.