OPINION
{¶ 1} Appellant, Britney Elliott ("Elliott"), appeals the February 9, 2005 judgment entry of the Ashtabula County Court of Common Pleas, Juvenile Division, finding her biological sons, James Seth Presnell, ("Seth") d.o.b. April 22, 1995, Isaiah Elliott, ("Isaiah"), d.o.b. October 25, 1996, and Dawson Elliott, ("Dawson"), d.o.b. June 23, 1998, to be dependent children pursuant to R.C. 2151.04(C). We affirm.
 {¶ 2} September 2, 2004, the Ashtabula County Children's Services Board ("ACCSB") filed a complaint alleging that Seth, Isaiah, and Dawson were dependent, and was awarded temporary, emergency custody of the boys. Due to statutory time constraints, this complaint was dismissed, and a second complaint was filed November 19, 2004. Adjudicatory hearing was held January 6, 2005; the dispositional hearing was held February 9, 2005. Elliott filed a timely notice of appeal, making the following assignments of error:
 {¶ 3} "[1.] The trial court abused its discretion, concluding that the Ashtabula County Children Services Board met the required standard of proof for a dependent child determination, as of the date of the complaint.
 {¶ 4} "[2.] The trial court abused its discretion, concluding that the Ashtabula County Children Services Board met the required standard of proof for a dependent child determination, as of the date of the adjudicatory hearing."
 {¶ 5} The following facts are relevant. Seth, Isaiah, and Dawson are Elliott's children by James Presnell ("Presnell"). The family is originally from Georgia. After an automobile accident in the 1998, Elliott seems to have voluntarily given the boys into the custody of Georgia authorities, in 1999. Elliott has suffered from substance abuse. She has been convicted or has pleaded guilty to fraud and to forgery. She has been convicted of domestic violence, in Georgia, evidently against the father of her youngest son, Tristen Yeomans, which caused the Georgia authorities to remove the boys from her custody again. Her son Tristen has been placed in his father's custody by the Georgia authorities. At one time, Elliott's maternal grandmother, whom Elliott has suggested might provide a home for the boys in Georgia, had custody of the two youngest children, Dawson and Tristen. The Georgia authorities removed the boys from her custody because she handed them over to Elliott, who took them out of the state, in violation of a Georgia court order. At the time of the adjudicatory hearing in this case, Elliott admitted that she had not had custody of any of the boys in question for at least two years. Their father, Presnell, was custodian.
 {¶ 6} In the late summer and early autumn of 2004, Elliott claims to have had three residences available to her for housing the boys: one in Florida, and two in the town in Georgia in which her maternal grandparents live. Attempts by the ACCSB to telephone Elliott at these residences in the autumn of 2004 were fruitless. And, interstate home studies voluntarily sent by ACCSB to the authorities in Georgia and/or Florida regarding the suitability of these alleged residences, as well as the residence of her maternal grandmother, had not been returned. In October 2004, Elliott moved from Florida to stay with friends in Georgia for about a month, before coming to Ohio to seek custody of Seth, Isaiah, and Dawson. Once in Ohio, she lived in a motel for some weeks before signing a six month lease on an apartment in Ashtabula, commencing December 15, 2004.
 {¶ 7} At some point in the summer or early autumn of 2004, the boys' custodial parent, Presnell, moved from Ashtabula, where he had lived with the boys for several years, back to Georgia, evidently to face criminal charges. While vague, the record indicates that he was or is living across the border from Georgia, in Florida, with relatives, and that his movements are circumscribed by the Georgia authorities.
 {¶ 8} Presnell left the boys in the care of his former girlfriend, Marilu Warren ("Warren"), in Conneaut, Ohio. At the time of the adjudicatory hearing in this case, though not present personally, Presnell was represented by counsel and admitted his inability, for the time being, to care for his boys, and agreed that they were dependent.
 {¶ 9} After obtaining temporary, emergency custody of Seth, Isaiah, and Dawson in September 2004, ACCSB returned them to Warren. However, Warren had no legal obligation to care for the children, nor was she their legal custodian. She merely had physical possession of the boys. Eventually, the oldest boy, Seth, was removed from Warren's home and placed in separate care. The two younger boys remained in Warren's care at the time of the adjudicatory hearing.
 {¶ 10} In its complaint of November 19, 2004, ACCSB made its allegations pursuant to R.C. 2151.04(C), which states that a child is dependent "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship[.]" ACCSB evidently premised its complaint upon the fact that Presnell, the custodial parent, was unavailable and out-of-state; that Elliott, the non-custodial parent, was difficult and/or impossible to contact, and out-of-state; that Warren, their caregiver, did not have custody of the boys; and, that one or more of the boys was ill and/or injured, and not receiving proper care. Specifically, Seth was experiencing behavior issues serious enough for removal.
 {¶ 11} ACCSB was required to prove dependency by clear and convincing evidence. In re Ohm, 4th Dist. No. 05CA1,2005-Ohio-3500, at ¶ 19. "`Clear and convincing' evidence is more than a mere preponderance of the evidence. Rather, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established."In re Ranker (Oct. 6, 2000), 11th Dist. No. 99-P0078, 2000 Ohio App. LEXIS 4661, at 5. "In determining whether a child is dependent, the focus should be on the child's condition and environment and not on the conduct of the parent." In re Biery
(Feb. 27, 2001), 7th Dist No. 99-BA-44, 2001 Ohio App. LEXIS 964, at 4. However, the conduct of a parent is significant, insofar as it forms or may form part of the child's environment. See, e.g., Id. at 4-5. "Juvenile courts are vested with broad discretion and their decisions will not be reversed absent an abuse of discretion." Id. at 4.
 {¶ 12} By her first assignment of error, Elliott challenges the finding of dependency at the time of the complaint, in November 2004. Her arguments focus on one issue: whether ACCSB made a "reasonable" effort, pursuant to R.C. 2151.419(A)(1), "to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." Elliott argues that, since she had three homes at least — two in Georgia, one in Florida — not to mention her maternal grandmother's house in Georgia, in which to place the boys, ACCSB's efforts to return the boys home was unreasonable.
 {¶ 13} This line of argument flies wide of the mark. The boys were in the legal custody of their father, Presnell. This is undisputed. Upon his return south, to face criminal charges, he left them in the care of Warren, his ex-girlfriend. "`[A] child who is receiving proper care pursuant to an arrangement initiated by the parent with a caregiver is not a dependent child * * *.'"Ohm at ¶ 27, quoting In re Riddle, 79 Ohio St.3d 259, 263, 1997-Ohio-391. Of course, ACCSB determined that the condition of the boys required their removal from Warren's care, at the time of the complaint. However, once matters stabilized, all three boys were returned to Warren's care, though Seth was later placed otherwise. As we see it, ACCSB did exactly what R.C. 2151.419
demands: it returned the boys to their home as soon as possible. Pursuant to the rule in Riddle, that home was with Warren since the boys' custodial parent, Presnell, had initiated the arrangement with Warren. Evidently, Warren has been generally satisfactory as a caregiver, though she was lacking in legal standing.
 {¶ 14} Assuming arguendo that Elliott is correct — that the boys' home as of the time of the complaint should have been with her — our decision would remain the same. As far as she could account for her whereabouts, in mid-November 2004, Elliott was either living with friends in Georgia, or in transit to Ohio, or living in a motel in Ohio. ACCSB tried to contact her at telephone numbers provided by her attorney and herself, unsuccessfully. ACCSB, on its own initiative, tried to obtain interstate compact home studies of the various purported residences she had in Florida and Georgia, including that of her maternal grandmother, unsuccessfully.
 {¶ 15} Elliott notes that her attorney provided to ACCSB a petition signed by various relatives and friends, from her hometown in Georgia, promising to help her and the boys, as well as a letter from her maternal grandmother's pastor, promising the same. This is wonderful, and may bode well for the future, but does not overcome the fact that ACCSB could not obtain any interstate compact study regarding the suitability of the homes proposed by Elliott for the boys, nor even communicate with her without difficulty. Elliott points to no authority requiring, or even permitting, ACCSB or the trial court to send the boys to Florida or Georgia without interstate compact studies. She does not explain how, in November 2004, ACCSB could have given her physical custody of the boys when she could not be located.
 {¶ 16} "In determining whether the agency made reasonable efforts [pursuant to R.C. 2151.419(A)(1)] to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." In re Lewis, 4th Dist. No. 03CA12, 2003-Ohio-5262, at ¶ 16. "`Reasonable efforts' does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible." Id. The foregoing reasoning, dealing with the extremely serious question of removing a parent's permanent custody, is yet more fully applicable in a temporary custody matter such as this instant, particularly in considering the issue of dependency at the time a complaint is filed. The record in this case is replete with attempts by ACCSB to find Elliott for the purpose of eventually reuniting her, if possible, with her sons. No more was required of ACCSB.
 {¶ 17} Under her first assignment of error, Elliott also argues that the trial court relied upon improper evidence concerning her criminal record and the children's custody in making its finding of dependency since no documents from Georgia (where the alleged violations occurred), properly admissible under the Rules of Evidence, were introduced. This argument fails. Elliott, testifying on her own behalf, admitted to convictions or guilty pleas to fraud, forgery and domestic violence. She admitted that her maternal grandmother had allowed her to take Dawson and Tristen out of Georgia when they were in the grandmother's custody, in violation of a Georgia court order. She admitted that her various children were in the custody of their fathers. The trial court would be remiss in failing to consider this self-admitted evidence concerning Elliott's past conduct, which would clearly impact upon her ability to provide an appropriate environment and home for her sons. Biery at 4-5.
 {¶ 18} By her second assignment of error, Elliott attacks the trial court's determination of dependency at the time of the adjudicatory hearing. She makes three arguments in support.
 {¶ 19} First, she notes the trial court's reliance upon a provision in the lease of her apartment in Ashtabula which does not allow any residents apart from herself and her co-lessee, Timothy Reeves, a cousin who moved to Ohio from Georgia to assist her. She argues that the provision does not prevent her from bringing her children to live with her, pursuant to federal law; and that the landlord has agreed, in any case, that her sons can move in.
 {¶ 20} This argument is unavailing. ACCSB supervisor Mark Dougherty testified at the adjudicatory hearing that the apartment, as presently configured and furnished, is insufficient to allow ACCSB to allow the three boys to move in.
 {¶ 21} Second, Elliott notes the trial court's statement in its judgment entry that she has no intention of remaining in Ohio, and argues that this indicates that the trial court found dependency due to her stated intention of returning with her sons, to live with her extended family in Georgia.
 {¶ 22} This argument is unavailing. The record shows that the boys' custodial parent was out-of-state, with no ability to return and take care of them. As noted above, Elliott had once convinced her grandmother, then custodian of Dawson and Tristen Yeomans, to violate a Georgia court order and let Elliott take them out of that state. Given this self-admitted history, Elliott's eagerness to leave this jurisdiction could certainly be considered by the trial court in determining whether Elliott was fit to be trusted with the boys.
 {¶ 23} Third, Elliott argues that the trial court noted her failure to complete any portion of her case plan as support for its finding of dependency at the time of the hearing, and that the case plan only becomes operative after a finding of dependency. Even if true, the argument is, like the others, unavailing. Elliott's lack of an appropriate home for the boys and her own admitted prior history, including her previous inability to care for them, are fully set forth in the record and sufficient to establish dependency on the part of Seth, Isaiah, and Dawson, at the time of the adjudicatory hearing.
 {¶ 24} Elliott's assignments of error are not well taken. The decision of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.
Ford, P.J., O'Neill, J., concur.