[Cite as *In re S.D.*, 2015-Ohio-354.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| S.D., P.D., P.D.-L., AND C.D. | : | |
| | : | **CASE NO. 2014-A-0063** |
| | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Juvenile Division Case No. 12 JC 17.

Judgment: Affirmed.

*Anita B. Staley,* Barthol & Staley, L.P.A., 7327 Center Street, Mentor, OH 44060 (For Appellant).

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Laura M. DiGiacomo,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Appellee).

*Eileen Noon Miller,* Law Offices of Eileen Noon Miller, LLC, P.O. Box 1681, Mentor, OH 44060 (Guardian ad Litem).

DIANE V. GRENDELL, J.

{¶1} Appellant, Kyle Leonard, appeals from the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, granting permanent custody of his children, P.D.-L. and C.D., to appellee, the Ashtabula County Children Services Board (ACCSB). The issues to be determined in this case are whether the trial court erred in finding it was in the best interest of the children to grant permanent custody to ACCSB when their father did not have adequate housing or employment and whether trial counsel was ineffective in failing to file a motion for legal custody under such

circumstances and by failing to file a pretrial motion for the recusal of the magistrate due to bias. For the following reasons, we affirm the decision of the court below.

{¶2} Leonard is the biological father of C.D., born July 26, 2012, as was established through a paternity test. Leonard also signed the birth certificate of P.D.-L., born November 17, 2010, although no paternity test was taken. Stephanie Davis is their biological mother. The two are not presently married or in a relationship.

{¶3} On February 28, 2012, an ex parte emergency order granted temporary custody of S.D., P.D., and P.D.-L. to ACCSB.[1]

{¶4} On February 29, 2012, ACCSB filed a Complaint for Temporary Custody, alleging that the children were neglected. The Complaint asserted that the children, living with their mother, lacked proper parental care and that "the family home was in horrendous condition and * * * is packed with trash and miscellaneous items." The caseworker "observed the home to be in deplorable condition and unsafe for the children." Further, the Complaint alleged that there had been cases regarding these same concerns in the past. As of that date, Leonard was also living in Davis' home. Following a Shelter Care Hearing, on February 29, 2012, the children continued in the custody of ACCSB.

{¶5} A case plan was filed on March 15, 2012. It required that Leonard provide safe and sanitary housing for his child, P.D.-L.

{¶6} In a March 28, 2012 Magistrate's Decision, the children were found to be neglected, pursuant to R.C. 2151.03(A)(2). On May 21, 2012, following a disposition hearing, the magistrate accepted the case plan and ACCSB's custody of the children was continued. These decisions were adopted by the court.

---

1. S.D. and P.D. have different biological fathers and are not the subjects of the present appeal.

{¶7} Following a request for emergency temporary custody, on April 22, 2013, C.D., born July 26, 2012, was also placed in the custody of ACCSB. On April 23, 2013, ACCSB filed a Complaint for Temporary Custody of C.D. The Complaint alleged that C.D. was an abused child, as he had bruises covering his body.

{¶8} A case plan filed on May 13, 2013, included C.D. and added the requirement that Leonard participate in a parenting evaluation with Dr. Fabian and complete parenting classes.

{¶9} On May 22, 2013, pursuant to the parties' stipulation, C.D. was found to be an abused child, under R.C. 2151.031(C). Following a disposition hearing, on July 18, 2013, it was ordered that C.D. remain in the custody of ACCSB.

{¶10} ACCSB filed a Motion to Modify Temporary Custody to Permanent Custody on January 29, 2014.

{¶11} At the hearing on ACCSB's Motion on May 22, 2014, Leonard's counsel requested that the magistrate recuse herself due to Leonard's view that she was prejudiced, based on her presiding over a juvenile case when he was 16. This request was denied.

{¶12} Prior to the presentation of testimony, Davis agreed that ACCSB should be granted permanent custody of all four children and that all had been in the custody of ACCSB for 12 out of 22 consecutive months.

{¶13} Katie Balog, a visitation supervisor for Rooms to Grow, supervised visits between P.D.-L., C.D., and Leonard. She testified that over a period of two years, the visits were "sporadic" and there was a "long period of time" when Leonard did not come. He attended 3 visits from August 24, 2012, until visits were suspended after several consecutive cancellations by Leonard. From November 16, 2012, until June 21, 2013,

3

Leonard did not visit with the children and did not contact Rooms to Grow. Following June 21, 2013, Leonard began to visit more frequently, although he still missed a few visits. Over two years, Leonard attended 15 of 35 possible visits. The visits went "fairly well" and Balog had no concerns. She noted that Leonard walked to his visits due to transportation issues.

{¶14} Jennifer Mochoskay, an ACCSB caseworker, testified that there were brief periods of time when she could not get in contact with Leonard. None of Leonard's residences were deemed appropriate for the children, due to various issues including occupants with child endangerment charges or ACCSB involvement. Mochoskay explained that the agency offered help regarding housing, which Leonard refused. Leonard never provided proof of employment, although he reported holding several jobs.

{¶15} According to Mochoskay, all four children were placed in a foster home on August 13, 2013, have remained in that home, and are doing "very well." She testified that they should remain together. Mochoskay would not recommend reunification with Leonard because he has not shown he is capable of providing an appropriate home or having an adequate income to care for the children.

{¶16} The foster mother, who stays at home with the children while her husband works, testified that they were doing well. In the future, the foster parents would like to adopt all four children, who were bonded with them and each other.

{¶17} Leonard explained that, at the time P.D.-L. was taken from Davis' home, he had been residing with her. He left her home due to a disagreement on her failure to clean and noted that the home was a health hazard, with mold and electrical problems.

4

**{¶18}** Since Leonard had moved out, he has lived in "quite a few residences," due to his inability to find work. He and his wife, Krystal Leonard, to whom he has been married since 2007, lived with various relatives during that time and currently reside with her grandmother, where the children could not live.

**{¶19}** Regarding his case plan requirements, Leonard testified that he complied with the requirement to have an evaluation with the psychologist, Dr. Fabian, but did not have stable housing over the past five years and had not had adequate income. He has held several jobs during the past few years, including seasonal employment. Over the past two years, he had periods where he played "phone tag" with his caseworker but he had kept in contact.

**{¶20}** Leonard explained that he sees a psychiatrist and has "anxiety issues," as well as several health problems, including "small respiratory issues." A recent visit had been cancelled due to a rash on his hand.

**{¶21}** Leonard testified that he would "push [his] body to the point where [he] break[s]" to take care of his children. He walked up to eight miles to attend visitation. Leonard believed that he should be reunified with the children, but he needs to find stable employment, which he is attempting to do, and to move. He admitted that he did not have suitable housing for the children at the time of the hearing.

**{¶22}** Leonard's wife, Krystal, testified that although she was not the mother of the two children, she would support Leonard and had expressed an interest in visiting with the children. She was working on obtaining support in paying for housing and gaining employment.

**{¶23}** The guardian ad litem, Eileen Noon Miller, did not believe Leonard would be in a position "at any reasonable time to be able to parent [the] children." She

5

believed that it was in their best interest for ACCSB to be granted permanent custody, especially given that "there is an absolute probability that they will be adopted and that * * * all four children will be kept together as a unit." She expressed the same opinion in her Guardian Ad Litem Report.

{¶24} In a June 19, 2014 Magistrate Decision, the magistrate found that the Motion for Permanent Custody was proven by clear and convincing evidence, noting that the children could not be placed with either parent within a reasonable time, and that Leonard had failed "continuously and repeatedly to substantially remedy the conditions" causing the children to be placed outside of their home. The magistrate also found that Leonard abandoned the children, the children had been in the temporary custody of ACCSB for 12 months out of a consecutive 22 month period, that ACCSB had made reasonable efforts to finalize the permanency plan, and that the children's best interest was served by granting permanent custody to ACCSB. The magistrate addressed the best interest factors and found that the children were placed together in foster care, the GAL believed that it was in the best interest of the children to be placed in ACCSB's custody, and they needed a permanent and legally secure placement.

{¶25} On June 25, 2014, Leonard filed Objections to Magistrate Decision, based on the lack of clear and convincing evidence to support the decision, which were overruled by the trial court on October 6, 2014.

{¶26} On the same date, the trial court issued a Judgment Entry, adopting the Magistrate Decision, and granting permanent custody of the children to ACCSB, for the same reasons outlined above.

{¶27} Leonard timely appeals and raises the following assignments of error:

6

{¶28} "[1.]  The trial court erred in granting the motion for permanent custody as such decision was against the manifest weight of the evidence.

{¶29} "[2.] The appellant's due process rights as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution were violated by ineffective assistance of counsel."

{¶30} "[P]arents who are suitable persons have a 'paramount' right to the custody of their minor children."  (Citations omitted.)  *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990).  The "extreme disposition" of permanently terminating a parent's rights with respect to a child, however, "is nevertheless expressly sanctioned * * * when it is necessary for the 'welfare' of the child."  *In re Cunningham*, 59 Ohio St.2d 100, 105, 391 N.E.2d 1034 (1979).  "[T]he *fundamental* or *primary* inquiry at the dispositional phase of these juvenile proceedings is not whether the parents * * * are either fit or unfit," rather, it is "the best interests and welfare of that child [that] are of paramount importance."  (Emphasis sic.)  *Id*. at 106.

{¶31}  A trial court must apply R.C. 2151.414(B) to determine the outcome of a motion for permanent custody.  The statute provides, in pertinent part: "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:  "(a) The child * * * has not been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; * * *

7

(d) The child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period * * *." R.C. 2151.414(B)(1).

{¶32} "In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to, * * * [t]he interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; * * * [t]he custodial history of the child * * *; [t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency"; and whether any relevant factors in (E)(7) to (11) of this section apply. R.C. 2151.414(D)(1)(a)-(e).

{¶33} The trial court's determination regarding the best interest issue must be supported by clear and convincing evidence, which is "more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Krems*, 11th Dist. Geauga No. 2003-G-2535, 2004-Ohio-2449, ¶ 36.

{¶34} In his first assignment of error, Leonard raises various arguments in support of his contention that the court's decision was against the manifest weight of the evidence.

{¶35} In cases involving the termination of parental rights, an appellate court applies the manifest weight of the evidence standard of review. *In re B.R.C.*, 11th Dist. Portage Nos. 2013-P-0059 and 2013-P-0060, 2014-Ohio-69, ¶ 41. Weight of the evidence, in both civil and criminal cases, concerns "'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather

8

than the other. It indicates clearly to the [finder of fact] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.'" (Emphasis sic.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

> **{¶36}** "In undertaking this limited reweighing of the evidence, however, we are guided by the presumption that the factual findings of the trial court were correct." *Sparre* [*v. Ohio Dept. of Transp.*, 2013-Ohio-4153, 998 N.E.2d 883,] ¶ 12 [(10th Dist.)]. "Accordingly, the weight to be given the evidence and the credibility of the witnesses are primarily questions to be answered by the trier of fact." *Id.*, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The rationale for this deference is the trier of fact is in the best position to view witnesses and observe their demeanor, voice inflections, and gestures. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Moreover, though sufficiency and manifest weight are different legal concepts, a finding that a judgment is supported by the manifest weight of the evidence necessarily includes a finding that sufficient evidence supports the judgment. * * *

(Citations omitted.) *In re M.J.*, 2nd Dist. Greene Nos. 2014-CA-32 and 2014-CA-33, 2015-Ohio-127, ¶ 35, citing *In re C.G.*, 10th Dist. Franklin Nos. 13AP-632 and 13AP-653, 2014-Ohio-279, ¶ 32.

9

**{¶37}** Leonard argues that the record does not support a finding that the children could not be placed with him within a reasonable time, given that he had housing and employment at the time of the hearing and he and his wife would be in a program that would provide adequate housing.

**{¶38}** Regarding P.D.-L., the trial court was not required to make the finding that she could be returned to Leonard in a reasonable period of time, since it properly found that she had been in the custody of ACCSB for more than 12 months of a consecutive 22 month period. *In re B.R.C.* at ¶ 54 (When the 12 of 22 months finding is made, "the court need not find that the child cannot or should not be placed with either parent within a reasonable time as required by R.C. 2151.414(B)(1)(a). The only consideration is the best interest of the child.") (citation omitted). Although the court made a finding that P.D.-L. could not be placed with Leonard within a reasonable time, it was not required to do so.

**{¶39}** Regarding C.D., the court also found that he had been in ACCSB's custody for 12 of 22 months as of the date of the trial. ACCSB, however, filed its January 29, 2014 Motion to Modify Temporary Custody to Permanent Custody on the grounds that he could not be placed with either parent for a reasonable time. At the time of the Motion, he had not been in the custody of ACCSB for 12 months, since emergency custody had been granted to ACCSB on April 22, 2013. As the Ohio Supreme Court has held, "the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)." *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 26.

10

**{¶40}** Regardless, the court also made the finding that C.D. could not be placed with Leonard in a reasonable time, pursuant to R.C. 2151.414(B)(1)(a). We agree with this finding. Leonard admitted that he did not have suitable housing for the children at the time of the hearing. There was no indication when he would be able to do so, as he had not been able to during the period while the case plan had been in existence. Although his wife testified that she was about to attend a meeting for the Shelter Plus Program, which is "supposed to help pay for housing," and assist with employment, it was not clear that this was a guarantee of housing or that they had even been accepted into the program. Given Leonard's failure to obtain housing over more than a two year period, it cannot simply be assumed that he will now be able to do so.

**{¶41}** Next, Leonard argues that there was not clear and convincing evidence that he failed to remedy the conditions that caused his children to be placed with ACCSB. Specifically, he asserts that ACCSB had an unreasonable housing expectation and he had done what he was asked to do on the case plan, including having housing. Suitable housing was part of the reason the children were taken into ACCSB custody initially and it is entirely reasonable that ACCSB would require him to have stable housing. While working on the case plan, Leonard moved from house to house, staying with relatives and in temporary places. Mochoskay testified that the residences where he stayed were inappropriate for children, including ones with occupants who had child endangerment charges or ACCSB involvement. Leonard refused help in obtaining appropriate housing. ACCSB had difficulty visiting several of the homes because he did not report his location. He did not establish a permanent home for the children and admitted at the hearing that his housing was inadequate. It cannot be said that it was

11

unreasonable for ACCSB to require a permanent home which it could inspect and ensure was safe for the children.

{¶42} Leonard also argues that the court erred in finding that he failed to show commitment to the children, since he visited them many times and reestablished contact after he did not see them for a period of time. Testimony established that Leonard visited on 15 of 35 opportunities. He also did not visit for a period of seven months in 2012-2013, leading to the court's finding that Leonard had "abandoned the children." *See* R.C. 2151.011(C) ("a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days"). He missed many more visits than he attended. The fact that Leonard cares about his children does not allow him to retain custody when it is not in the children's best interest, considering all necessary and relevant factors.

{¶43} Leonard also asserts that reasonable efforts were not made to help him with the case plan. Specifically, he argues that ACCSB did not provide services for his mental health issues.

{¶44} "In determining whether the agency made reasonable efforts [pursuant to R.C. 2151.419(A)(1)] to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." (Citation omitted.) *In re Elliott*, 11th Dist. Ashtabula No. 2005-A-0018, 2006-Ohio-738, ¶ 16. "'Reasonable efforts' does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible." (Citation omitted.) *Id. Also* R.C. 2151.414(C) ("[t]he court shall not deny an agency's

12

motion for permanent custody solely because the agency failed to implement any particular aspect of the child's case plan").

{¶45} In this case, ACCSB has been involved with P.D.-L. and C.D. for a majority of their lives. During this period, Leonard was provided with supervised visitation with the children, which he frequently missed, case supervision, help with obtaining rides to visitation, a parenting evaluation, and referrals for housing, which he refused. Such services were reasonable efforts at reunification. *See In re S.P.,* 11th Dist. Lake Nos. 2011-L-032 and 2011-L-033, 2011-Ohio-3747, ¶ 73. It also does not appear that ACCSB had any indication that Leonard was in need of mental health services or that such services would be beneficial in reuniting him with the children.

{¶46} Leonard also asserts that his wife, the children's stepmother, was not allowed to attend visits. He fails to explain how this has any bearing on the outcome of this case. Even if she had been allowed to visit, Leonard's failure to comply with the case plan is the main basis for his inability to regain custody of the children.

{¶47} Finally, Leonard asserts that the court erred in finding that it was in the children's best interest to be placed in the permanent custody of ACCSB. He raises similar issues to those discussed above, noting that the housing problem would be remedied, emphasizing that he wanted to parent his children, and arguing that no serious problems existed, such as drug use.

{¶48} Given Leonard's inability to fully comply with the case plan, the lack of stable and adequate housing, his failure to retain a job that could support the children, the children's current living arrangement and relationship with their foster family, and the guardian ad litem's recommendation, it was not against the manifest weight of the evidence to find that, pursuant to R.C. 2151.414(B)(1)(a), the child cannot be placed

13

with either of the child's parents within a reasonable time or should not be placed with the child's parents and it was in the children's best interest to be placed in the permanent custody of ACCSB. While Leonard essentially characterizes his financial and housing problems as not serious enough to terminate his parental rights, he was unable to take the children into his custody for the entire period they were with ACCSB and there is no indication that this problem has been remedied. Without any ability to provide a home or financial support for the children, it is hard to imagine how it could be in their best interest to be in Leonard's custody. Their current relationship with their foster family, who is willing to adopt them, is also an important consideration that weighed into the ultimate best interest conclusion.

**{¶49}** The first assignment of error is without merit.

**{¶50}** In his second assignment of error, Leonard argues that his counsel was ineffective by failing to properly raise the issue of bias in a motion, rather than orally at the hearing, and by failing to file a motion for legal custody.

**{¶51}** "The test applied to evaluate a claim of ineffective assistance of counsel in a proceeding to terminate parental rights is the two-step test of *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674." *In re L.M.*, 11th Dist. Ashtabula No. 2010-A-0058, 2011-Ohio-1585, ¶ 57. Accordingly, Leonard must demonstrate "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland* at 687-688.

**{¶52}** As to the issue of bias, regardless of whether counsel should have filed a motion prior to the hearing, it is unclear how this caused prejudice to Leonard. The

14

magistrate considered the oral motion and determined that she was not biased against Leonard, giving justifications for this decision. The magistrate did not deny the motion based on the fact that it was made orally rather than in writing. A review of the record and the foregoing analysis regarding the basis for the court granting permanent custody to ACCSB also reveals no evidence that there was bias in the custody determination. Without a showing that the outcome would have been different had counsel filed a written motion for disqualification, there is no basis for reversal on this issue. *Madrigal* at 388-389.

{¶53} A similar rationale applies to the contention regarding the failure to file a motion for legal custody, pursuant to R.C. 2151.353(A)(3) ("if a child is adjudicated an abused, neglected, or dependent child, the court may * * * [a]ward legal custody of the child to either parent * * * who, prior to the disposition hearing, files a motion requesting legal custody of the child"). It is difficult to say that a request for custody would have been granted, given the circumstances outlined above. It was not shown that Leonard ever had the capability to be granted custody of the children throughout the time they were in ACCSB's custody, given his housing situation. If such a motion would not have been granted, then the failure to file it does not warrant a finding of ineffective assistance of counsel. *See In re G.W.*, 12th Dist. Butler No. CA2013-12-246, 2014-Ohio-2579, ¶ 25 (finding no ineffective assistance when counsel failed to file a motion for legal custody, since there was no "reasonable probability such a motion would have been granted").

{¶54} While Leonard also argues that counsel was ineffective by failing to request a mental health element to the case plan, we again find no merit in this argument. Aside from a minor mention of "anxiety" issues at the hearing, he did not

explain how, if at all, this impacted his ability to comply with his case plan.  Leonard presents no specific argument as to how the outcome would have been different had counsel requested such a component, merely asserting the conclusory statement that "the outcome could have been different."  This is not sufficient to demonstrate ineffective assistance of counsel.

{¶55}  The second assignment of error is without merit.

{¶56}  Based on the foregoing, the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, granting permanent custody of C.D. and P.D.-L. to ACCSB, is affirmed.  Costs to be taxed against appellant.

TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.