[Cite as *In re B.T.*, 2017-Ohio-7454.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| B.T., D.T., AND C.T. | | |
| | : | **CASE NO. 2017-A-0025** |

Appeal from the Ashtabula County Court of Common Pleas, Juvenile Division, Case No. 2014 JC 00030.

Judgment: Affirmed.

*Mandy J. Gwirtz,* Mandy Gwirtz, LLC, 20050 Lakeshore Boulevard, Euclid, OH 44123 (For Appellant Mother).

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047; *Margaret A. Draper,* Assistant Prosecutor ACCSB, 3914 C Court, Ashtabula, OH 44004 (For Appellee Ashtabula County Children Services Board).

*Anita B. Staley,* Barthol & Staley, L.P.A., 7327 Center Street, Mentor, OH 44060 (Guardian ad litem).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Teresa Toland, appeals the trial court's decision terminating her parental rights and granting permanent custody of her children, B.T., D.T., and C.T., to the Ashtabula County Children Services Board (ACCSB). We affirm.

{¶2} ACCSB filed its complaint for protective supervision in June of 2014. Its verified complaint states that it has been involved with the family since April of 2014 due to concerns of neglect and because the family was homeless and living in a motel room. There was also a history of abuse of B.T. by mother's live-in boyfriend at the time, who is also C.T.'s father.

{¶3} On December 22, 2014, the trial court granted ACCSB temporary custody of the children for several reasons, including a lack of an adequate home and appellant's failure to comply with her mental health and drug screening requirements. The children went into foster care. At the time of the final hearing, they remained in the same home in which they had been placed in December 2014. The foster family wants to adopt all three children.

{¶4} In July 2015, the ACCSB moved for permanent custody of the three children alleging in part that they cannot be placed with either parent in a reasonable time. Final hearing was held June 9, 2016, and the magistrate found that the children could not be placed with their parents in a reasonable time and that a grant of custody was in the best interest of the children. The trial court agreed.

{¶5} Appellant raises one assigned error:

{¶6} "The trial court erred by granting permanent custody of B.T., D.T., and C.T. to the Ashtabula County Children Services Board contrary to the manifest weight of the evidence."

{¶7} A parent's right to raise a child is a basic civil right. *In re Phillips,* 11th Dist. No. Ashtabula 2005-A-0020, 2005-Ohio-3774, ¶22, citing *In re Hayes,* 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). "The parent's rights, however, are not absolute.

Rather, "'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" *In re Cunningham* (1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (quoting *In re R.J.C.* (Fla.App.1974), 300 So.2d 54, 58)." *In re West,* 4th Dist. Athens No. 05CA4, 2005-Ohio-2977, ¶31.

{¶8} Before a juvenile court can terminate parental rights and award permanent custody to the requesting agency, it must conduct a hearing and apply a two-pronged analysis. First, a trial court must find by clear and convincing evidence that one or more of the factors in R.C. 2151.414(B)(1)(a)-(e) applies. One of these factors is whether the children cannot be placed with either of the child's parents within a reasonable time or should not be placed with their parents based on an analysis of R.C. 2151.414(E). R.C. 2151.414(B)(1)(a); *In re C.C.,* 11th Dist. Trumbull Nos. 2016-T-0050 & 2016-T-0058, 2016-Ohio-7447, ¶74.

{¶9} Second, upon finding one or more of these factors applicable, the court then must determine whether granting custody of the child to the agency is in the child's best interests pursuant to the analysis in R.C. 2151.414(D). *In re L.M.R.,* 11th Dist. Lake No. 2016-L-096, 2017-Ohio-158, ¶34-35.

{¶10} The trial court proceeded under R.C. 2151.414(B)(1), which states:

{¶11} "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

3

{¶12} "(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."

{¶13} The trial court likewise made findings under R.C. 2151.414(E), which provides in part:

{¶14} "If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court *shall* enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

{¶15} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and

4

rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶16} "* * *

{¶17} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;" (Emphasis added.)

{¶18} "'Clear and convincing evidence is more than a mere preponderance of the evidence; instead, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.' *In re Aiken,* 11th Dist. Lake No. 2005-L-094, 2005–Ohio–6146, ¶28." *In re M.G.*, 11th Dist. Geauga No. 2013-G-3162, 2014-Ohio-974, ¶12.

{¶19} We review the trial court's termination of one's parental rights pursuant to the civil manifest weight of the evidence standard. *In re J.H.,* 11th Dist. Lake No. 2012-L-126, 2013-Ohio-1293, ¶91; *In re B.R.C.,* 11th Dist. Portage Nos. 2013-P-0059 and 2013-P-0060, 2014-Ohio-69, ¶41. "When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court ""weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."" *Eastley [v. Volkman,* 132 Ohio

St.3d 328] at ¶20; quoting *Tewarson v. Simon,* 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001)." *In re D.M.,* 4th Dist. Hocking No. 15CA22, 2016-Ohio-1450, ¶11.

{¶20} "Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact." *In re West,* 4th Dist. Athens No. 05CA4, 2005-Ohio-2977, ¶36-37.

{¶21} Furthermore, the existence of one of the R.C. 2151.414(E) factors is sufficient to support a finding that a child cannot be placed with either parent within a reasonable period of time. A court need not address every factor under R.C. 2151.414(E). *In re C.C., J.H. and M.H.,* 11th Dist. Trumbull Nos. 2016-T-0050 & 2016-T-0058, 2016-Ohio-7447, ¶75, citing *In re J.S.E., J.V.E,* 11th Dist. Portage Nos. 2009-P-0091 & 2009-P-0094, 2010-Ohio-2412, ¶40.

{¶22} Here, the trial court found appellant failed to remedy the conditions causing the children to be placed outside the home, i.e., insufficient housing, under R.C. 2151.414(E)(1). It also found appellant demonstrated a lack of commitment toward the children by failing to regularly support her children and "showing an unwillingness to provide an adequate permanent home" for her children pursuant to R.C. 2151.414(E)(4). We address the trial court's findings under (E)(1) and (E)(4) together because appellant's lack of an adequate and permanent home supports the trial court's finding under both subsections.

{¶23} In determining whether the children cannot be placed with either parent within a reasonable time or should not be placed with the parents, a court must consider all relevant evidence including facts relating to the adequacy of parental care occurring

6

before and after the motion for permanent custody is filed. *In re Foust*, 57 Ohio App.3d 149, 154, 567 N.E.2d 1042 (3d Dist.1989).

{¶24} The Board initially became involved in this case due to concerns including neglect and homelessness since the family resided in a motel. Thereafter, the court granted ACCSB custody of the children in December 2014 based on several reasons, including appellant's continued lack of a sufficient home.

{¶25} ACCSB caseworker Christy Lalli testified for ACCSB at the permanent custody hearing. Lalli recommended that permanent custody be granted to ACCSB. Lalli confirmed that ACCSB initially became involved with the family in response to truancy concerns, but thereafter, there were also allegations of abuse and housing issues. Appellant's housing situation continued to be an issue throughout Lalli's involvement with the family.

{¶26} Lalli explained that appellant did not pursue a housing opportunity she found for her, and appellant also did not pursue public housing because she said the two-year wait was too long. Instead, at the time of hearing appellant resides in a duplex with her fiancé and at least four other adults. The court ordered the adults residing in her home to get fingerprinted to ensure that it is a safe environment for the children, but only two of the five complied. Appellant did not pay the rent, but her fiancé did. She did produce a letter from the landlord verifying that she was allowed to reside in the home.

{¶27} Nevertheless, the trial court found the home to be insufficient for the children because appellant continued to lack independent and permanent housing due to her unwillingness to consider public housing as well as other housing options presented by Lalli.

7

**{¶28}** Lalli likewise indicated that appellant failed to establish her employment and verify her income sufficient to support the children. Appellant testified that she worked under the table for a construction company approximately ten hours per week, when she was not attending college, earning approximately $700 every six months.

**{¶29}** Appellant's visitation with the children was sporadic. She attended 22 of 35 possible visitations.

**{¶30}** The guardian ad litem also recommended granting permanent custody to ACCSB. She agreed that appellant failed to remedy the conditions resulting in the children being placed out of the home, and that she demonstrated a lack of commitment to the children by showing an unwillingness to provide an adequate permanent home for them. She concludes appellant "has done nothing to demonstrate commitment to the children during this case[,]" and that appellant was unable to show that "she can meet the basic needs of the children at this time or in the foreseeable future."

**{¶31}** Based on the foregoing, we cannot find that the trial court clearly lost its way and created a manifest miscarriage of justice requiring reversal. *Eastley*, supra, ¶20; R.C. 2151.414(E)(16). ACCSB established that appellant did not secure adequate and permanent housing and that she was unwilling to do so, and as such, she did not remedy one of the conditions causing the children to be placed outside the home. R.C. 2151.414(E)(1). ACCSB likewise established that appellant lacks a commitment to the children based on her failure to regularly support and visit her children, and her unwillingness to secure a permanent home for them. R.C. 2151.414(E)(4).

**{¶32}** As for the second prong, the trial court's finding that permanent commitment is in the best interest of the children is likewise not against the manifest

8

weight of the evidence. In assessing the best interest of the children, a court must consider all relevant factors, including:

{¶33} "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶34} "(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶35} "(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

{¶36} "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶37} "(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1).

{¶38} Although appellant established she had consistent housing, her living situation remained unsettled at the time of the final hearing. The evidence showed that appellant lacked the ability to provide the children with a secure permanent placement

9

absent the court's granting custody to ACCSB. R.C. 2151.414(D)(1)(d). She did not pay the rent, which was paid for by her new fiancé of three months with whom she lived. Lalli also testified that appellant lived with up to eight other adults, including some who appeared transient. Lalli also confirmed that two of the residents also had cases with ACCSB and they were not allowed to have their own children in the house.

{¶39} The trial court also ordered appellant to produce a lease with her name on it. She never did. At the final disposition hearing she produced a letter from the landlord, stating she had a right to reside in the house. Nevertheless, her income of $700 every six months plus food stamps was insufficient to provide for three children.

{¶40} Consistent with court orders, appellant completed a parenting class for children in the age range of B.T. and D.T., but she did not complete the class for infants as instructed.

{¶41} Appellant attended 22 of 35 possible visitations. And while appellant took and passed drug screens in 2015, she failed to take several requested by ACCSB in 2016. She provided only a urine sample, but no hair sample for a drug screen ordered by the trial court in April 2016. Appellant admitted to prior methamphetamine use and suffering from alcoholism. Appellant also underwent a mental health assessment and completed some, but not all the recommended services. R.C. 2151.414(D)(1)(a).

{¶42} Lalli also testified that the children bonded well with their foster family, especially the youngest child, and that the family wants to adopt the children. This would enable the children to secure a permanent and safe home, which is in their best interests. The trial court also found that appellant's inconsistent bi-weekly visitation harmed her relationship with her children because the children looked forward to the

10

visits, but were left upset upon her canceling or failing to show. Thus, consistent with R.C. 2151.414(D)(1)(a), the interaction and interrelationship of the child with appellant and their foster parents also supports granting permanent custody to ACCSB.

{¶43} The children's guardian ad litem states in her report that the children loved appellant, but that neither of the children old enough to express a wish as to custody expressed a desire to return to her. She described the children as "thriving" in their foster care home.

{¶44} Based on the foregoing, the trial court's best interest determination is supported by competent, credible evidence, and as such we cannot find the finder of fact clearly lost its way. Thus, the second prong is satisfied as well.

{¶45} Accordingly, appellant's sole assigned error lacks merit, and the trial court's decision is affirmed.


COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.
DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.


_____


COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

{¶46} I concur with the well-reasoned conclusion of the majority. However, I feel it gives short shrift to the analysis required by the statutory framework. I write separately to discuss the analysis that is inherent in that framework, and which should be applied by trial courts when considering the two-prong test for termination of parental rights under R.C. 2151.414.

11

{¶47} The law presumes it is in the overriding best interests of a child to be raised by his or her natural parents. *In re Hughes*, 9th Dist. Wayne No. 1759, 1982 WL 2875, *3 (Jan. 20, 1982) ("there is a strong presumption that it is in the child's best interests to be raised by its natural parents"); *In re Mullens*, 1st Dist. Hamilton No. C-790315, 1980 WL 352882, *2 (April 2, 1980) (there is "a strong tendency in our law to find the child's best interests lies in staying with a natural parent"); *see also In re Marriage of Barber*, 8 Ohio App.3d 372, 375 (8th Dist.1983) ("it is in the best interests of children that they continue to know, love, and respect their natural parents"). The federal and state constitutions, as well as the statute, protect the reciprocal rights of parents and their children, including children's rights to be with their parents, and that of parents to be with their children. *Santosky v. Kramer*, 455 U.S. 745, 753-754 (1982).

{¶48} In finding that ACCSB had carried its burden of showing it was in the best interests of these children to grant it permanent custody, the magistrate cited Ms. Lalli's testimony that all three had bonded with their foster parents, and that Ms. Toland had only made 22 of 35 potential visitations, R.C. 2151.414(D)(1)(a). The magistrate cited the fact that B.T. and D.T. refused to express a desire to return to Ms. Toland's custody, R.C. 2151.414(D)(1)(b). She further found, pursuant to R.C. 2151.414(D)(1)(d), that a legally secure placement for the children could not be achieved without a grant of permanent custody, due to Ms. Toland's failure to comply with her case plan. Great emphasis was placed on Ms. Toland's housing.

{¶49} It is uncontroverted that the financially secure, certified foster parents' home (with a per diem per child through a state subsidy) is a more stable home than Ms. Toland's, better physically and economically. This, however, is a comparison of

apples and oranges: a home with superior economic resources and community support will always be better in the eyes of the outside observer, such as attorneys, judges, and guardians ad litem, as the benefits are quantitative and easily assessed. If utilized and weighed on the ACCSB's side of the ledger in determining best interests, it creates a false choice and the reason for removal analysis mandated in the first prong of the statute becomes a nullity. ACCSB's single goal in seeking permanent custody is to insure that children are adequately cared for and the reasons of removal have been remedied – not to elevate the children to a higher economic standard at the expense of the state and its taxpayers. Therefore, in considering the first prong of the test, the primary task of the trial court is to focus narrowly on the reasons for removal and the parent's ability to remedy these reasons – not on the economic benefit of living in a quantitatively superior environment. Otherwise, the permanent custody proceeding and the best interests determination simply become a competition between which of two homes provides the better standard of living for the children. This is not contemplated by the statute, and is a competition the natural parent cannot often win.

{¶50} The statute for establishing a case plan, R.C. 2151.412, is the vehicle, the "contract," whereby a parent can arrange with the state to remedy the reasons for removal, with the goal of family reunification, after there has been a finding of substandard care, or unsafe conditions. The case plan is the road map. The state's burden in overcoming the constitutional rights of both the children and the parent by clear and convincing evidence is not easy, nor meant to be. Any hearing on a motion for permanent custody must focus first, plainly and simply, on whether the parent has remedied the reasons for removal and the specific reasons enumerated in the

13

complaint. This permanent custody proceeding is the family law equivalent of the death penalty. *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, ¶14. For it to have legal and constitutional significance it cannot become a competition between whether foster parents or ACCSB, with their superior resources, potentially providing children a more stable atmosphere, versus the immeasurable and intangible love of a natural parent for his or her child.

{¶51} The primary reason presented by the record in this case for ACCSB seeking permanent custody is Ms. Toland's failure to comply with the case plan. This begs the question of how many of the case plan's requirements were meant to remedy the reasons for removal, and how many were surplusage? ACCSB conceded at oral argument and the record supports the view that the primary reason for removal was domestic violence. There is overwhelming evidence this has been remedied. The question remains whether evidence of non-compliance with the remaining elements of the case plan – completing a parenting class – are connected to the reasons for removal, and thus, prevents reunification. Simple failure to comply with a case plan, when there is no evidence that the elements of the case plan not achieved were relevant to the reasons for removal cannot, as a matter of law, be sufficient to overcome the presumption that it is in the best interests of these children to remain in the custody of their natural mother. Ms. Toland had made only 22 of 35 potential visitations. ACCSB carried the burden of proof: absent from the case plan and the record is any standard showing how many visitations she was required to make to show compliance. What were her reasons for failing to attend? Do these reasons relate to the reasons for removal? The portions with which Ms. Toland did not comply contained in the record do

14

not appear to relate to the original reasons for removal, or whether the children can be placed at home with services.

{¶52} The most compelling issue in this case, which brings me to vote with the majority, is Ms. Toland's refusal to take ACCSB's offer of finding her suitable housing, where she could live alone with the children, in a more secure environment than that provided by her present housing, which is overcrowded, and where she lives with several unrelated males. The housing suggested by ACCSB would immediately improve the safety and living conditions of the children. Ms. Toland's housing choice illustrates a lack of appreciation of the children's best interests, violates their right to grow up in a safe, secure environment, and casts serious doubt on Ms. Toland's ability to keep them safe and secure at a reasonable level going forward. The rights of parents are not absolute. Those rights carry with them equal responsibilities, one of which is assuring their children live in a safe, stable environment, as best as the parent can achieve.

{¶53} I find ACCSB carried its burden under both prongs of the test for this reason: her inability to provide these children with safe and stable housing.

{¶54} I concur.

_____


DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

{¶55} I agree with the decision to affirm the termination of Toland's parental rights, as she repeatedly failed to comply with critical case plan goals, provided an unsafe living environment, and given the guardian ad litem's recommendation that

15

permanent custody be granted to ACCSB. I write separately, however, to discuss several important points that have not been adequately addressed in the opinion.

{¶56} First, one of Toland's main arguments in support of her best interest analysis was the lack of a lengthy custodial history in this matter. ACCSB was granted temporary custody of the children in December 2014 and moved for permanent custody seven months later. It is noteworthy, however, that ACCSB had been involved with the family since April 2014. More importantly, the decision to move for permanent custody was based on Toland's demonstration that she would not comply with the case plan or accept the services that were offered to her. It is difficult to imagine how providing her with extra time would be of benefit if she refused to utilize the services which would allow her to improve her circumstances and the children's lives. "[I]t was the General Assembly's purpose in establishing the present procedures for the termination of parental rights 'to prevent children from lingering in foster care.'" (Citation omitted.) *In re J.G.*, 11th Dist. Lake No. 2015-L-102, 2016-Ohio-896, ¶ 77.

{¶57} Toland also makes the contention, which she placed great focus on in oral argument, that her lack of income was a cause of the termination of her parental rights. This argument must be addressed, as it is entirely unmeritorious. The trial court never made any finding that Toland's lack of financial resources rendered her an unsuitable parent. Toland's failure to attend over one third of her visitation appointments with the children had a great impact on them, regardless of her reasons for failing to attend. This is direct evidence of a lack of commitment toward them pursuant to R.C. 2151.414(E)(4) and was not in their best interests. Moreover, a lack of financial resources does not explain Toland's refusal to accept services that were offered to her

16

by ACCSB. Toland could have utilized these services to improve her children's lives but chose not to do so. It must be emphasized that "'the best interests and welfare of [the children] * * * are of paramount importance.'" *In re S.D.*, 11th Dist. Ashtabula No. 2014-A-0063, 2015-Ohio-354, ¶ 30, citing *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶58} It is also necessary to emphasize the extent to which being placed with a foster family has benefitted the children, especially B.T. The foster parents ensured B.T. received necessary counseling. Significant concern was expressed by the ACCSB caseworker that Toland had not done so and returning B.T. to her custody could result in a disruption of her treatment. Such an important fact cannot be overlooked when it comes to considering the children's best interests.

{¶59} Finally, it is essential to respond to the other concurring judge's contention that "the primary reason for removal was domestic violence" and the implication that this should somehow absolve Toland from fulfilling some of the case plan requirements. While the record indicates that the child abuse by Toland's former boyfriend is no longer at issue, this has no bearing on the validity of the trial court's reasoning for its decision. The children were removed from the home based on Toland's failure to make progress on her case plan, a point with which Toland's counsel seemed to agree at oral argument. Rectifying the abuse situation is of questionable relevance, at best, to whether the conditions causing removal of the children were remedied pursuant to R.C. 2151.414(E)(1).

{¶60} Furthermore, even prior to the removal of the children and lack of compliance with the case plan, there were significant concerns other than abuse, such

17

as the children's truancy during a period of time when they were living in a hotel. Multiple ACCSB employees explained that truancy was the cause of the agency's initial involvement with the children. They also identified that housing was a concern at that time, an issue which continues to persist. The various causes for ACCSB's involvement with the family more than justify creating multiple, relevant case plan goals. While the other concurring judge questions what portion of the case plan goals must be completed to avoid termination of parental rights, the trial court, as the fact-finder, must weigh all of the factors on a case-by-case basis, as it properly did in the present matter.

{¶61} As to the failure to remedy the concerns within the case plan, it is clear that Toland failed to do so. She failed to complete a parenting class for C.T., and was not compliant with mental health treatment. Toland's argument that her housing is sufficient is unreasonable. There was ample testimony regarding the living circumstances that raised serious concerns. Multiple unrelated adults, some of which were not permitted to have their own children living with them, resided in Toland's residence. The fact that those identified did not have criminal charges does not mean that this type of environment is suitable for children. This is especially true given the testimony that drug-related paraphernalia was seen within the home by a caseworker. This was legitimately viewed as a serious concern by ACCSB as well as the trial court. *See In re J.L.*, 10th Dist. Franklin No. 15AP-889, 2016-Ohio-2858, ¶ 73 (permanent custody was warranted when the parents had "poor decision-making" skills and "lack of regard" for whom they allowed in the household).

{¶62} It is evident from the record that there were sufficient reasons to conclude permanent custody must be granted to ACCSB. In light of the many clarifications outlined above, I concur in judgment only.